Negotiable notes—demand of payer—notice to endorsee.

The act of 1820 does not dispense with notice to an endorser of a negotiable note, though as to some paper, it may prescribe what shall be *due* diligence in making a demand of the maker.

ASSUMPSIT against the defendant as endorser of a promissory note of King and McLure, payable in six months from the 14th February, 1829. It is averred in the declaration, that on the 14th August, 1829, the plaintiff demanded payment of the drawers, and gave the defendant notice. Plea, the general issue.

On the trial, the note was read in evidence, and proof made of a demand of the makers, five days after the note fell due. No notice was given to the defendant, but the makers were prosecuted in Virginia to judgment and execution. The defendant is a young and single man; his parents were living in the same town with the plaintiff.

*J. Peck,* for the plaintiff, asked the Court to instruct the jury that under the Ohio statute no notice was necessary to an endorser; 22 *O. L.* 322.

*W. B. Hubbard,* contra.

WRIGHT, J. We think the statute does not dispense with notice to an endorser. The act referred to, on certain kinds of paper, may possibly enlarge the *time* for a demand of the drawer, and dispense with a prosecution of the drawer to insolvency. So far, the act may settle what shall be due diligence; but the act is silent as **132]** *to the notice; because, as we suppose, it was not intended to alter the law merchant in that particular. The defendant is entitled to a verdict.

Verdict accordingly, and judgment for the defendant.

---

## MERCER *v.* M'WILLIAMS AND BETHEL.

Constitution—private property taken for public use—sovereign attribute—supervisors of roads and their assistants.

Private property may be taken for public use, when provision for the assessment and payment of damages is made, whether the owner is actually paid or not.
If the right to appropriate private property to the public use depended upon the movement of the owner it would be useless, as if he chose to sell his prop-

Mercer *v.* M'Williams and Bethel.

erty, he could do so without the exercise of the sovereign power against him.

A supervisor may open an established road, before the damages are assessed and paid to the owner of the land, and may justify pulling down fences to open the road.

A supervisor may employ others to work under him in opening such road, and they will be protected by his authority, whether resident in his road district or not.

TRESPASS, quare clausum fregit. Pleas—1. Severally for each defendant, not guilty. 2. As to M'Williams, that he was a supervisor of roads, and, as such, did the act complained of as a trespass. On this issue was joined. As to Bethel, that he acted under the orders of the supervisor, according to law. Replication. That Bethel did not do the acts under the direction of the supervisor of the district where he resides. Issue was taken on that.

The cause was submitted to the court on the following agreed state of facts: M'Williams opened the fences of the plaintiff along the roads laid out under the act of February, 1828, and February, 1830, according to the road law of February, 1824. He was a supervisor, and laid the fences down under the order of the trustees, to open all roads. Mercer applied to the commissioners for damages, and had them assessed at $225, which the commissioners refused to allow, because they thought the amount unjust to the county. An appeal was taken to the Court of Common Pleas, and the order of the commissioners confirmed. No order was issued for the money, and no order was issued by the commissioners for opening the roads. Bethel did not reside in M'Williams' district; but was present and assisted in pulling down the fences. If the plaintiff has a right to recover, the damages shall be six cents, &c.

*Genin,* for the plaintiff, insisted that the assessment of damages is *an essential pre-requisite to the road, and the refusal to pay, [**133** is the destruction of the road; 29 *O. L.* 361.

*Nichols* and *Wier,* contra.

WRIGHT, J. The question most pressed upon the court, is the supposed constitutional inhibition to taking private property for public use, without compensation in money be first made. *Con. Art.* 8, *sec.* 4. This question has been repeatedly before this court, and the courts of other states, and it has been uniformly held, that the state, by virtue of its transcendental or sovereign power, its eminent domain, may take the private property of one citizen for the good of the whole. The constitution limits the exercise of this power to cases where a compensation in money is made. In practice, this clause has been deemed complied with, where the

legislature has provided by law for the assessment and payment of damages, if they are claimed; 4 *O.* 288; 5 *O.* 118; 2 *Kent*, 274. Judge Kent has indeed carried the doctrine much farther; but we have now no occasion for going beyond former decisions. Unless the provision for the assessment and payment of damages was sufficient, the public could never get the use of private property for great public works, without the owner chose first to move to get his damages paid. If left to his own will, the provision would become useless, because if he chose to sell he could do so, and there would be no need of sovereign interference to appropriate the property. Public works should not be so subject to the will of an individual. The party in this case has sought his damages, and the refusal to pay does not affect the question. The remedy of the party is for the damages—the road is complete without payment. The supervisor is justified. So is Bethel, who assisted, whether in his own district or not. The supervisor may employ hands out of his district.

Judgment for the defendant.